# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN WILLIARD FULLER,   :  <br>     Plaintiff,   : <br>                : <br>     v.   : <br>                 : <br> CHRISTOPHER NARKIN,   : <br> NICHOLAS DUMAS, and   : <br> SEAN FORSYTH,   : <br>     Defendants.   : | Civil Action <br> No. 16-995 |

McHUGH, J                                                                              NOVEMBER 26, 2018

## MEMORANDUM

This case involves the application of *Heck v. Humphrey*, 512 U.S. 477 (1994) to claims brought under 28 U.S.C. § 1983, with the primary claim being one for use of excessive force. *Heck* typically bars a case where a defendant would have to negate an element of the offense of which he has been convicted in order to succeed on his Section 1983 action. The Defendant officers here focus on the jury's verdict and supporting testimony in the underlying criminal action, arguing that Plaintiff John Fuller's theory of liability would require a federal jury to find facts that are necessarily irreconcilable with Plaintiff's conviction in state court.[1]

Plaintiff's path to recovery is both narrow and daunting, but I cannot at this stage conclude that Plaintiff would necessarily need to negate an element of his underlying convictions, nor that a federal jury would be required to adopt a version of the facts that is totally inconsistent with those convictions. Accordingly, Defendants' Motion to Dismiss will be granted in part, but must be denied as to the excessive force and state-law battery claims.

---

[1] Plaintiff began this action *pro se*, but I appointed counsel because it involved a shooting. The Court is indebted to Jeremy Gunn, Esquire, and Montgomery McCracken Walker & Rhoads for accepting an appointment under the auspices of its Prisoner *pro se* Attorney Panel.

1

## I. Controlling Standard

This case is controlled by the well-established standard of Fed. R. Civ. P. 12(b)(6), as amplified by *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In deciding a Motion to Dismiss under 12(b)(6), the Court may consider and take judicial notice of matters of public record even though such documents are outside of the Complaint. *Anspach ex rel. Anspach v. City of Phila.,* 503 F.3d 256, 273 n.11 (3d Cir. 2007). This includes judicial notice of prior judicial proceedings and other public filings, though "not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.,* 181 F.3d 410, 426 (3d Cir. 1999).

## II. Factual Background

In October 2014, Plaintiff John Fuller led Norristown Police on a high-speed chase through the borough of Norristown after exiting I-76.[2] Plaintiff alleges that the pursuit came to an end when he ultimately crashed into a guard rail, disabling the truck that he was driving. He further alleges that at that point he raised his hands in surrender but, nonetheless, Officer Christopher Narkin, one of the defendants here, fired three shots, one of which struck Plaintiff in the arm. Plaintiff goes on to allege that Defendant Officer Christopher Narkin conspired with co-defendants Officer Nicholas Dumas and Deputy Sheriff Sean Forsyth to cover up the facts surrounding the shooting and to give perjured testimony at his criminal trial, resulting in his conviction.

Plaintiff brings two 28 U.S.C. § 1983 claims, one for excessive force against Officer Narkin and one for conspiracy against Officers Narkin and Dumas, together with Deputy Sheriff

---

[2] Plaintiff himself described the encounter in this way in his initial filing with the Court, before representation by counsel.

Forsyth, and a separate state law claim for battery against Officer Narkin. Defendants have filed two separate Motions to Dismiss, one by Officers Narkin and Dumas, and the other by Deputy Sheriff Forsyth, both primarily arguing that Plaintiff's Section 1983 claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), on the ground that a judgment in his favor would necessarily imply the invalidity of his underlying conviction. They contend as well that the officers involved were entitled to qualified immunity.

To gain further insight into the preclusive scope of the verdicts in Plaintiff's underlying criminal case, I have reviewed the transcript from the trial as well as the opinions of the trial judge and the Pennsylvania Superior Court. Defendants request that I place emphasis on the opinion of the trial judge denying Fuller a new trial. However, consideration of the opinion's content for any purpose beyond evaluating the significance of the jury's verdict would be improper under Rule 12(b)(6). *See S. Cross Overseas Agencies Inc.* 181 F.3d at 426.

At the criminal trial, Officer Narkin testified as follows. Plaintiff was operating a tractor-trailer that spanned more than 50 feet in length, traveling at a high rate of speed in a 25-mph zone within the Borough of Norristown, striking parked vehicles in the process. The truck ran through two red traffic lights before making a sharp turn where the driver lost control and broke through a guard rail and onto Route 202. Narkin observed that the truck was partially stuck but was concerned that Plaintiff was trying to extricate the vehicle to continue driving. Narkin and other officers approached with weapons drawn, commanding him to surrender. According to Officer Narkin, in response, Fuller put his hands over his head in surrender but, as Narkin crossed in front of the vehicle to approach him, he dropped his hands as if to shift gears and began revving the engine. Narkin, fearing he would be struck, opened fire, with one shot hitting the mark. N.T. 51-165, Mar. 8, 2016, ECF No. 30-6.

Officer Nicholas Dumas, also a defendant in this case, testified that he responded to radio calls of the chase just as the tractor trailer careened into the guard rail. The driver was alternately raising his hands and attempting to put the truck in gear. He could hear the revving of the engine and grinding of the gears, and the truck was bucking and lurching. Based on his position at the scene, he viewed himself as being in danger if the truck drove forward. Officer Narkin fired when Fuller again lowered his hands toward the controls as Narkin was in front of the truck. N.T. 170-228, Mar. 8, 2016, ECF No. 30-6.

Deputy Sheriff Sean Forsythe, also a defendant in this case, testified as follows. He arrived at the scene of the crash in response to radio calls. The tractor trailer was entrapped, but lurching. Multiple officers were shouting to turn the engine off. As Officer Narkin took a position in front of the truck, another officer warned him to move because he was "in a bad place." As the truck engine continued to rev its engine, Forsythe felt that he was personally in danger and began to retreat, and he heard but did not see the shots fired. N.T. 148-85, Mar. 9, 2016, ECF No. 30-7.

Plaintiff did not testify, but his statement to the police was admitted into evidence. The statement recounts the following. The chase began when his efforts to turn the trailer around on Route 22 led him onto side streets, where he hit some cars. He then sped away, hitting more cars, after bystanders threatened to call police. Eventually, an officer (Officer Narkin) pulled up behind him, but Plaintiff continued on. He later ran into a dead end on another street, which led him to go through a metal guardrail. The truck came to a stop and would not move despite Plaintiff's efforts. He admits that he continued those efforts even when police were in front of him with their guns drawn, stating "[a]t that point, I didn't care if they shot me. I was still trying

to drive, but it wasn't going well, so I put my hands up." He then states: "At some point, some bullets came through the window."  N.T. 116-121, Mar. 9, 2016, ECF No. 30–7.

For present purposes, the most important aspect of the criminal verdict is Plaintiff's conviction on two counts of Aggravated Assault.  Under Pennsylvania law, a person is guilty of aggravated assault pursuant to 18 Pa. Cons. Stat. § 2702 if he:

> (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;
>
> (2) attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c) or to an employee of an agency, company or other entity engaged in public transportation, while in the performance of duty;
>
> (3) attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty; . . .
>
> (6) attempts by physical menace to put any of the officers, agents, employees or other persons enumerated in subsection (c), while in the performance of duty, in fear of imminent serious bodily injury.

The state court jury in the criminal prosecution was provided with a verdict sheet that set forth the specific elements addressed by each count of the indictment.  With respect to one charge of aggravated assault, the jury found that Plaintiff "[d]id attempt to cause serious bodily injury to Officer Christopher Narkin while in the performance of duty."  Def.s' Ex. D, ECF No. 25-4.  With respect to a separate charge of aggravated assault, the jury found that Plaintiff "[d]id attempt by physical menace to put Officer Narkin in fear of serious bodily injury while in the performance of duty."  *Id.*

**III.    The Heck Doctrine**

The plaintiff in *Heck* had been convicted in a state court of involuntary manslaughter in connection with the death of his wife. Without pursuing any state remedies to set aside his conviction, he brought an action against various law enforcement officers under Section 1983, mostly sounding in theories of malicious prosecution and alleging that his conviction was a result of constitutional violations on their part. Although the grounds asserted might have given rise to a writ of *habeas corpus*, Heck sought only damages and no form of injunctive relief. After considering the interrelationship between the remedies available through both *habeas corpus* and Section 1983, the Court held that "when a state prisoner seeks damages in a [Section] 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 486. In applying *Heck*, a court must examine the nature of the plaintiff's challenge, giving careful regard to all his allegations, the underlying verdict, as well as the factual findings necessary to reaching it. *Gibson v. Superintendent*, 411 F.3d 427, 447-49 (3d Cir. 2005), *overruled on other grounds, Dique v. N.J. State Police,* 603 F.3d 181 (3d Cir. 2010). In practical terms, the rule in *Heck* functions similarly to the doctrine of collateral estoppel.

**IV.    Analysis**

   **A. Conspiracy**

I begin by addressing the easier of the issues presented. Fuller alleges that the officers conspired to give false testimony against him. To prevail on a conspiracy claim, a plaintiff must allege a specific factual basis to support agreement and concerted action—the essential elements of conspiracy. *Capogrosso v. Supreme Court of N.J.,* 588 F.3d 180, 185 (3d Cir. 2009). Here,

simply as a matter of pleading, Fuller has failed to do so by making wholly conclusory allegations. Substantively, to the extent that the criminal jury credited the testimony of law enforcement in convicting Fuller, the conspiracy claim would necessarily fail unless the underlying verdict is invalid. Accordingly, the conspiracy claim is barred by *Heck* until such time as the conviction is set aside.

In Plaintiff's original complaint he also raised a claim that his conviction was the product of perjured testimony. I read the Amended Complaint as dropping such a claim. But to the extent it has not been abandoned, it would also be barred by *Heck,* as well as the doctrine of absolute witness immunity. *Briscoe v. LaHue,* 460 U.S. 325 (1983).

As a result, these claims are dismissed as to all Defendants, with the result that Officer Dumas and Deputy Forsyth are no longer parties to this action.

### B. Excessive Force and Battery

The Third Circuit has applied *Heck* conservatively in excessive use of force cases, recognizing that an underlying conviction does not automatically legitimize the force used in apprehension. For example, in *Lora-Pena v. F.B.I.,* 529 F.3d 503, 506 (3d Cir. 2008), the plaintiff had already been convicted of assault and resisting arrest when federal marshals attempted to take him into custody for a violation of supervised release. The Court of Appeals held that the degree of force necessary to accomplish the arrest had not been before the jury in the criminal case, so the conviction did not bar a Section 1983 claim for excessive force. Similarly, in *Nelson v. Jashurek*, 109 F.3d 142 (3d Cir. 1997), the Third Circuit permitted an excessive force claim to proceed despite the plaintiff's underlying conviction for resisting arrest. It reasoned that, even though the criminal jury had found under the applicable statute that the officer was justified in using "substantial force" to arrest the plaintiff, it did not necessarily

7

follow that "he was justified in using an excessive amount of force and thus does not mean that his actions in effectuating the arrest necessarily were objectively reasonable." *Id*. at 145; s*ee also Olick v. Pennsylvania*, 739 F. App'x 722, 724 n.3 (3d Cir. 2018); *Garrison v. Porch*, 376 F. App'x 274, 277–78 (3d Cir. 2010).

Here, if the jury's verdict had definitively established that Fuller never fully surrendered and continued to rev the engine as Officer Narkin crossed in front of the rig trying to reach him, I would not hesitate to hold that the officer's use of force to protect himself was reasonable as a matter of law.³ Under *Graham v. Connor*, 490 U.S. 386, 396 (U.S. 1989), an officer's conduct must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," taking into account "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Similarly, even if Officer Narkin did not feel personally threatened, given the totality of Fuller's conduct in recklessly operating a tractor-trailer on the narrow streets of Norristown and his apparent desperation to escape, deadly force would have been justified to protect the public if he persisted. In *Brosseau v. Haugen*, 543 U.S. 194 (2004), the Supreme Court addressed a case where a suspect attempting to flee by car was shot in the back by an officer as he drove off. In affirming dismissal, the Court reiterated the rule that "where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force."⁴ *Id.* at 203.

---

³ In that regard, given the testimony at trial, regardless of whether Fuller's hands were raised, so long as he was attempting to drive forward by any means, Officer Narkin would have been at risk.

⁴ Technically, *Brosseau* was decided on grounds of qualified immunity. But when read in combination with *Mullenix v. Luna*, 136 S. Ct. 305 (2015), another case brought by a suspect shot while using a vehicle to try to escape, and *Scott v. Harris*, 550 U.S. 372, 385 (2007), which held that police may consider the risk to pedestrians

8

The question at this stage, however, is whether the state court jury's verdict definitively established at what point in time Officer Narkin fired. That Officer Narkin was threatened is not in doubt, nor is the fact that the safety of the public was at risk until such time as Fuller truly surrendered. But whether the officer's use of force was justified was not an issue the jury was charged to address. Officer Narkin's discharge of his weapon was part of the background evidence, yet the elements of the charges on which Fuller was convicted did not require the jury to make any findings about the timing of its use. The analytical challenge presented by this case is demonstrated by Fuller's statement to police, which was introduced at trial. He freely admits his reckless conduct and acknowledges his continued attempt to escape even when confronted by officers with guns drawn: "[a]t that point, I didn't care if they shot me. I was still trying to drive. . . ." N.T. 119, Mar. 9, 2016, ECF No. 30-7. Defendants quote from this and other portions of Fuller's statement but do so selectively. Def.s' Suppl. Br. 4, n.1, ECF No. 38. They omit his concluding comment: "but it wasn't going well, so I put my hands up."[5] N.T. 119, Mar. 9, 2016, ECF No. 30-7. Defendants' omission is no accident, because it underscores the difficulty in applying *Heck* to this record. Although virtually all of Fuller's statement appears to establish a factual predicate for an appropriate use of deadly force, the end of his statement asserts that he surrendered. *Whether* he ultimately surrendered and *when* he did so in relation to the shots being fired is central to Fuller's claim for excessive force, but that precise question was not integral to the jury's verdict.

---

and other motorists in deciding whether to use deadly force, it is clear that the Supreme Court affords officers substantial latitude in using force to address the threat posed by fleeing vehicles.

[5] In his *pro se* Complaint, Plaintiff pleaded that the shooting was unjustified because his collision with the guard rail had severed a brake line rendering the vehicle inoperative. The Amended Complaint refers to such damage as having occurred, "causing the brakes to automatically engage and stop the truck," Am. Compl. ¶ 13, ECF No. 22, but it is not clear if this is still being advanced as an alternative theory of liability. Parenthetically, I note that nothing in the record suggests that the officers would have *known* the truck had been rendered inoperable and the evidence at trial was that the engine remained on and the vehicle was bucking. Whether Plaintiff still advances this as a separate theory of liability is immaterial to my analysis here.

Though the defense can be faulted for ignoring evidence from the underlying trial that undercuts its position, the Plaintiff can equally be faulted for overstating his case by pleading facts that are plainly inconsistent with the criminal jury's verdict. Fuller avers:

> 15. Plaintiff, fearing for his life and hearing the officers shouting, raised his arms in the air in compliance with the orders of Defendants Narkin and Dumas.
>
> 16. Plaintiff kept his arms in the air at all times and at no point, dropped his arms, made any sudden movements, or engaged in any threatening behavior that warranted the use of Defendants Narkin or Dumas' weapons.

Am. Compl., ECF No. 22.

Fuller's conviction on two counts of aggravated assault, in response to the special interrogatories reviewed above, definitively rebuts the allegation that "at all times" he was compliant and never engaged in threatening conduct toward the officers.[6] *Heck* would therefore bar Plaintiff from advancing such a broad theory of liability at trial. That said, the verdict returned by the criminal jury does not rule out the possibility that Fuller finally surrendered and does not address at what point in the sequence the shots were fired.

Defendants place great emphasis on Judge Rice's well-reasoned opinion in *Stauffer v. Simpkins*, 2015 WL 667012 (E.D. Pa. 2015), but the facts there were significantly different. The plaintiff in *Stauffer* was convicted under the same statute as Fuller, but the only factual basis on which the jury could have convicted him on the charge of aggravated assault was that his vehicle was moving toward the officers when they fired, a fact which the plaintiff (defendant in the underlying prosecution) conceded was true in his Section 1983 case. *Id.* at *4. Judge Rice

---

[6] It should be noted that leading police on a high-speed chase is also sufficient to support convictions for both aggravated assault and recklessly endangering another person under Pennsylvania law. *Commonwealth v. Broaden*, 980 A.2d 124 (Pa. Super. 2009); *Commonwealth v. Beckman*, 450 A.2d 660 (Pa. Super. 1982). In this case, the verdict sheet makes clear that such charges were considered separately, so there is no question that the jury concluded Officer Narkin was threatened by Fuller's conduct at some point *after* the chase was terminated.

10

therefore had an uncontested set of facts upon which to evaluate both the import of the underlying verdict and the conduct of police, whereas here all parties agree that the vehicle was at rest, and Fuller pleads that whatever threatening conduct he might have engaged in, he had desisted at the time he was shot. As a result, *Heck* does not bar Fuller's claim for use of excessive force.

Officer Narkin also pleads qualified immunity. The problem with that argument is that it is not the law which is uncertain here, but the facts. As set forth above, if the underlying criminal verdict unambiguously demonstrated that Fuller refused to surrender and continued to rev the engine while the officers were in harm's way, use of force would have been objectively reasonable. Conversely, the law is equally clear that force may not needlessly be used on a suspect who has surrendered and poses no risk. *Bodine v. Warwick*, 72 F.3d 393, 400 (3d Cir. 1995) (Alito, J.); *see also Ansell v. Ross Twp., Pa.*, 419 F. App'x 209, 213 (3d Cir. 2011); *Patterson v. City of Wildwood*, 354 F. App'x 695, 696–97 (3d Cir. 2009); *Gulley v. Elizabeth City Police Dep't*, 340 F. App'x 108, 110 (3d Cir. 2009); *Hogan v. City of Easton*, 2006 WL 2645158, at *14 (E.D. Pa. 2006) (Padova, J.).[7]

Finally, Plaintiff brought a supplemental claim for battery under state law. Defendants assert that *Heck* should bar this claim as well. The principles established by *Heck* are a creation

---

[7] Circuit courts have consistently rejected the defense of qualified immunity where the plaintiff alleges continued use of force following surrender. *See Valladares v. Cordero,* 552 F.3d 384, 389–90 (4th Cir. 2009) (Qualified immunity inappropriate where officer allegedly picked plaintiff up off the ground, where he had been lying limp, and slammed his head into a car, breaking his jaw.); *White v. Geradot,* 509 F.3d 829, 835 (7th Cir. 2007) (Qualified immunity inappropriate where officers allegedly shot plaintiff after he "turned to face [officer] *with his hands in the air*") (emphasis original); *Smith v. Buck*, 564 F. App'x 258 (8th Cir.) (Qualified immunity not appropriate where police allegedly ordered dog to bite plaintiff after he had "got[ten] down on his knees and put his hands in the air" and was surrounded by officers with drawn guns.); *Wade v. Copeland*, 669 F. App'x 413, 414 (9th Cir. 2016) (Qualified immunity inappropriate where police shot plaintiff when his hands were up.); *Herrera v. Bernalillo Cty. Bd. Of Cty. Comm'rs,* 361 F. App'x 924, 926 (10th Cir. 2010) (Gorsuch, J.) (Qualified immunity inappropriate where officers beat plaintiff though he "promptly complied with the deputies' order, lying face down on the ground with his hands out."); *S.S. ex rel. Montgomery v. Bolton,* 522 F. App'x 452, 454 (11th Cir. 2013) (Qualified immunity inappropriate where police allegedly hit plaintiff in the head with a gun after he was on his knees with his hands in the air).

of federal law and Defendants cite no authority for its application to state law claims, let alone authority from Pennsylvania. My research reveals that where *Heck* has been extended to state law causes of action, it has been by an express ruling by the highest state court. *See e.g.*, *Yount v. City of Sacramento*, 43 Cal. 4th 885, 902 (2008) (holding that, "[i]n light of the fact that *Heck* and California law express similar concerns about judicial economy and the avoidance of conflicting resolutions, [*Heck*] applies equally to [plaintiff's] common law claim for battery."). Regardless, because I have concluded that *Heck* does not bar the federal claim, the same result applies to Plaintiff's state law claim.

Even analyzing both federal and state claims through the lens of collateral estoppel, or issue preclusion (similar to the *Heck* analysis), Plaintiff's claims are not barred. Fuller did not testify at the criminal trial and his statement introduced into evidence supports two different factual scenarios. Although the jury certainly found that a threat existed, it was not required to address when or for how long in rendering its verdict.

## V. Conclusion

The evidence in the underlying case paints a disturbing picture of Fuller's conduct. Given that evidence, it seems extremely unlikely that Fuller can prevail in front of a federal jury. But the current motion is governed by Rule 12(b)(6), and taking the Complaint as pleaded and viewing the record in the light most favorable to the Plaintiff, I am compelled to deny the motion as to Fuller's excessive force and state-law battery claims.

An appropriate Order will be issued.

                                               /s/ Gerald Austin McHugh
                                                  United States District Judge